UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAVISTAR INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 3507 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| DELOITTE & TOUCHE LLP, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum Opinion and Order

Plaintiff Navistar International Corporation brought this action in the Circuit Court of Cook County, Illinois, against Defendant Deloitte & Touche LLP, alleging fraud, fraudulent concealment, negligent misrepresentation, professional malpractice, negligence, breach of contract, breach of fiduciary duty, and a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. Deloitte removed the suit to federal court pursuant to 28 U.S.C. § 1441(b), and Navistar has moved to remand pursuant to 28 U.S.C. § 1447. The motion is granted.

Navistar is a publicly traded company listed on the New York Stock Exchange. Deloitte is an audit and accounting firm that until 2006 served as Navistar's independent auditor, accounting advisor, and strategic business consultant. Navistar's claims fall into two broad categories. The first category—which encompasses the professional malpractice, negligence, and breach of contract claims, and part of the fiduciary duty claim—essentially sounds in professional malpractice, with the gist being that Deloitte's accounting advice and auditing services violated applicable professional standards of care. The second category—which

-1-

encompasses the fraud, fraudulent concealment, negligent misrepresentation, and ICFA claims, and part of the fiduciary duty claim—essentially sounds in fraud. The gist of those claims is that Deloitte made material misrepresentations to Navistar about the work it performed for Navistar; for example, the complaint alleges that Deloitte falsely affirmed that its internal quality controls were adequate, falsely claimed that it conducted its work for Navistar in accordance with applicable professional standards, and fraudulently failed to disclose that it suffered from a systemic lack of quality control rendering it unable to meet its professional obligations.

Deloitte was entitled to remove this case only if Navistar could have filed it originally in federal district court. 28 U.S.C. § 1441(a). The parties are not diverse, so diversity jurisdiction does not lie under 28 U.S.C. § 1332(a). Rather, Deloitte asserts that certain claims in Navistar's complaint "aris[e] under the … laws … of the United States," thus allowing for federal question jurisdiction under 28 U.S.C. § 1331. "A case 'aris[es] under' federal law within the meaning of § 1331 … 'if a well pleaded complaint establishes *either* that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (emphasis added; brackets in original) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)). It is undisputed that state law "creates" all eight of the complaint's causes of action. Deloitte maintains, however, that some of Navistar's claims necessarily depend on resolution of substantial questions of federal law, thus creating federal jurisdiction under the principles applied in and exemplified by *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005).

*Grable* was a quiet title action involving property belonging to Grable that the Internal Revenue Service ("IRS") seized to satisfy a federal tax delinquency. *Id*. at 310-11. The IRS sent

Grable notice of the seizure by certified mail and then sold the property to Darue. *Id*. at 310.

Years later, Grable sued Darue in state court to quiet title, alleging that Darue's record title was

invalid because the IRS's notice of seizure violated the governing federal tax title statute. *Id*. at

311. The Supreme Court approved Darue's removal of the case to federal court. Although the

parties were not diverse and Grable's complaint articulated only state law claims, the Court

invoked the doctrine that "federal-question jurisdiction will lie over state-law claims that

implicate significant federal issues," a doctrine that "captures the commonsense notion that a

federal court ought to be able to hear claims recognized under state law that nonetheless turn on

substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope

of uniformity that a federal forum offers." *Id*. at 312. The Court explained that the federal issue

raised by Grable's complaint was "an essential element of its quiet title claim," that the meaning

of the federal statute was "actually in dispute" and "appear[ed] to be the only legal or factual

issue contested in the case," that the government "has a direct interest in the availability of a

federal forum to vindicate its own administrative action" in sending the seizure notice in the

manner it did, and that "because it will be the rare state title case that raises a contested matter of

federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions

will portend only a microscopic effect on the federal-state division of labor." *Id*. at 315.

To find federal jurisdiction under *Grable*, a district court must conclude that the

complaint's "state-law claim necessarily raise[s] a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally

approved balance of federal and state judicial responsibilities." *Id*. at 314. The Supreme Court

has cautioned that this doctrine permits federal jurisdiction only in a "special and small

category" of cases and that "it takes more than a federal element 'to open the "arising under"

door.'" *Empire Healthcare*, 547 U.S. at 699, 701 (quoting *Grable*, 545 U.S. at 513). The Seventh Circuit emphasized the point in *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007), describing *Grable* as holding that Grable's state law claim arose under federal law "because, apart from the procedural device (a quiet-title action), there was *nothing* in it but federal law, with the potential to affect the national government's revenues," and because the federal issue concerned "a federal agency's performance of duties under federal law." *Id*. at 910. *Bennett* added that "the influence of federal law on the outcome of a contract (or tort) suit is not enough to support the arising-under jurisdiction." *Ibid*. Applying these principles here yields the conclusion that federal jurisdiction does not lie over either of the two categories of claims in Navistar's complaint.

As noted above, the first category of claims are rooted in Deloitte's alleged violation of professional standards of care. Some of those standards are imposed by federal law. In granting the Public Company Accounting Oversight Board ("PCAOB") regulatory authority over public company auditors, the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201 *et seq*., authorized the PCAOB to "adopt as its rules … any portion of any statement of auditing standards or other professional standards that the [PCAOB] determines satisfy the requirements of [15 U.S.C. § 7213(a)(1)], and that were proposed by 1 or more professional groups of accountants that shall be designated or recognized by the Board." 15 U.S.C. § 7213(a)(3)(A)(i); *see also id*. § 7213(a)(3)(B) (authorizing the PCAOB to adopt initial and transitional standards). The following year, the PCAOB adopted generally accepted auditing standards ("GAAS") as the standards applicable to audits of publicly traded companies. *See* Order Regarding Section 103(a)(3)(B) of the Sarbanes-Oxley Act of 2002, Securities Act Release No. 8222, Exchange Act Release No. 47745, 80 SEC Docket 142 (Apr. 25, 2003), *available at*

http://www.sec.gov/rules/other/33-8222.htm; *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1170 n.1 (10th Cir. 2006).

The complaint alleges that Deloitte violated GAAS, and because the PCAOB effectively federalized GAAS, Deloitte argues that Navistar's audit malpractice claims introduce the kind of embedded federal issue that creates "arising under" jurisdiction under *Grable*. Deloitte is incorrect. The mere fact that Navistar alleges that Deloitte violated federal standards does not, by itself, give rise to *Grable* jurisdiction. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 805-06, 817 (1986) (federal jurisdiction does not lie over state tort claim alleging that the defendant drug company's violation of a federal misbranding statute was presumptively negligent under Ohio law); *Bennett*, 484 F.3d at 912 ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law."); *Hays v. Cave*, 446 F.3d 712, 714 (7th Cir. 2006) ("Issues concerning the meaning of that law are quite likely to arise in such a malpractice action, but there is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions; otherwise there would be no field called 'conflict of laws' and no rule barring removal of a case from state to federal court on the basis of a federal defense."). And even assuming that Navistar's claims necessarily raise questions regarding Deloitte's compliance with PCAOB audit standards, satisfying one *Grable* requirement, *Grable* jurisdiction is still inappropriate for at least three separate reasons.

As an initial matter, Deloitte does not identify any potentially relevant PCAOB audit standard that the parties have "actually disputed." *Grable*, 545 U.S. at 314. Without a clearly identified federal audit standard subject to a live dispute in this case, *Grable* jurisdiction is inappropriate. *See Arnold v. Baxter Healthcare Corp.*, 609 F. Supp. 2d 712, 717 (N.D. Ohio 2009) ("The [plaintiffs'] complaint fails to raise any disagreement over the meaning of the

-5-

[federal] regulations.  [The defendant] can point to no dispute about federal law or the federal regulatory process.").

Even if Deloitte had identified an "actually disputed" question regarding the meaning of any particular PCAOB audit standard, determining whether Deloitte violated that standard would turn not on "a nearly pure issue of law," but on a "fact-bound and situation-specific" application of those standards to the particular facts of Deloitte's extensive work for Navistar.  *Empire Healthcare*, 547 U.S. at 700-01 (internal quotation marks omitted).  *Grable* jurisdiction is inappropriate for that reason as well.  *See id.* at 701; *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (rejecting *Grable* jurisdiction where "the federal issue is predominantly one of fact"); *Bennett*, 484 F.3d at 910 (rejecting *Grable* jurisdiction in a case turning on "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law"); *Maxwell v. Aurora Loan Servs.*, 2011 WL 4014327, at *2 (E.D. Mo. Sept. 9, 2011) ("The question of whether defendants failed to follow [federal] guidelines is a fact-specific inquiry as to whether defendants acted in an unfair and deceptive manner, and not a 'nearly pure issue of law' that could govern other cases.  The [federal] guidelines are only a standard upon which to measure defendants' conduct.") (quoting *Empire*, 547 U.S. at 700) (internal citation and some internal quotation marks omitted); *Rathore v. Bank of Am., N.A.*, 2011 WL 2077538, at *5 (E.D. Va. May 24, 2011) ("The question whether [the defendant] correctly followed the guidelines created by the Federal Government appears to be a fact-specific inquiry.") (internal citation and quotation marks omitted); *Wash. Consulting Grp. v. Raytheon Technical Servs. Co.*, 760 F. Supp. 2d 94, 106 (D.D.C. 2011) ("Unlike in *Grable*, there also appears to be no legal dispute as to the meaning of these statutes, but only a factual dispute as to whether or not they were violated."); *Gonzales v. Ever-Ready Oil, Inc.*, 636 F. Supp. 2d

1187, 1194 (D.N.M. 2008) (rejecting *Grable* jurisdiction where the plaintiff's state dram shop claim implicated federal aviation statutes and regulations, but was "centrally about the application of a mixture of federal and state law to fact").

Even putting aside these two obstacles, accepting jurisdiction merely because the court must apply PCAOB audit standards would significantly upset the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The fact that Sarbanes-Oxley does not create a private right of action to enforce PCAOB audit standards, while not weighing *dispositively* against jurisdiction, certainly cuts in its disfavor. *See id*. at 318 ("the absence of a federal private right of action [i]s evidence relevant to … the sensitive judgment about congressional intent that § 1331 requires") (internal quotation marks omitted); *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008). What defeats federal jurisdiction here is that Deloitte's position, if accepted, "would move a whole category of suits to federal court"—accounting malpractice suits against publicly traded companies that otherwise could not be brought in federal court—that, unlike the particular type of quiet title suit brought in *Grable*, are relatively common. *Bennett*, 484 F.3d at 911. This would upset a conscious legislative choice Congress made in Sarbanes-Oxley, which grants private rights of action to enforce some of its provisions, *see* 15 U.S.C. § 7244(a)(2)(B); 18 U.S.C. § 1514A(b), but not 15 U.S.C. § 7213(a)(3), the provision that authorized the PCAOB to adopt public company audit standards. The line drawn by Sarbanes-Oxley "would be rendered meaningless" if every malpractice case involving PCAOB audit standards were allowed in federal court. *Bennett*, 484 F.3d at 911 (holding that accepting jurisdiction in an air crash case with fewer than 75 fatalities would undermine 28 U.S.C. § 1369, which permits federal jurisdiction over accident cases "where at least 75 natural persons have died in the accident at a discrete location" if minimal diversity is

present); *see also O.S. ex rel. Sakar v. Hageland Aviation Servs., Inc.*, 609 F. Supp. 2d 889, 894 (D. Alaska 2008) (same).

The second category of Navistar's claims are rooted in Deloitte's alleged fraudulent misrepresentations regarding the quality of the work it performed for Navistar. As noted above, those claims allege that Deloitte falsely affirmed that its audits complied with governing standards and that it had adequate internal controls to ensure such compliance. Pertinent here, Navistar alleges that Deloitte breached its state law duties by failing to disclose certain aspects of a 2004 PCAOB inspection report that made adverse findings regarding Deloitte's audit practices in general and its audit of a Navistar subsidiary in particular. Doc. 1-2 at ¶¶ 162-171; Doc. 1-3 at ¶ 358(3)-(4). Deloitte contends that this allegation is defeated by a Sarbanes-Oxley provision stating that PCAOB inspection reports "shall be—made available in appropriate detail to the public …, except that no portions of the inspection report that deal with criticisms of or potential defects in the quality control systems of the firm under inspection shall be made public if those criticisms or defects are addressed by the firm, to the satisfaction of the [PCAOB], not later than 12 months after the date of the inspection report." 15 U.S.C. § 7214(g)(2). According to Deloitte, this provision creates an embedded federal issue justifying *Grable* jurisdiction. Although the parties appear to actually dispute the meaning of the provision, thus satisfying one *Grable* requirement, Deloitte's jurisdictional argument still fails on at least two separate grounds.

As an initial matter, none of Navistar's misrepresentation-based claims rest solely on Deloitte's failure to disclose the PCAOB's 2004 findings. To the contrary, each claim can proceed based on factual allegations unrelated to those findings, as each rests in substantial part on alleged representations Deloitte made to Navistar in 2002 and 2003, well before the 2004

inspection report. Doc. 1-1 at ¶¶ 6, 32-33, 65, 91; Doc. 1-3 at ¶¶ 350-353, 375(a)-(d), 384-386, 393, 401, 425. Moreover, Navistar does not need the PCAOB's findings to establish that Deloitte's representations were false; whether those representations were true or false depends on historical facts concerning the quality of the work Deloitte performed for Navistar, not on the PCAOB's findings regarding that work. Given this, the misrepresentation-based claims do not "necessarily raise" a federal issue. *Grable*, 545 U.S. at 314; *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (noting that *Grable* jurisdiction does not lie "[w]here a federal issue is present as only one of multiple theories that could support a particular claim"); *Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981, 988 (N.D. Ill. 2009) ("If a claim can be supported independently by both state and federal law theories, federal question jurisdiction does not attach because federal law is not a necessary element of the claim.") (internal quotation marks omitted).

Even if Deloitte's failure to disclose the PCAOB's criticisms was a necessary component of the misrepresentation-based claims, the federal issues created by 15 U.S.C. § 7214(g)(2) involve, at most, defenses to those claims. Navistar's complaint does not allege that Deloitte violated § 7214(g)(2). Rather, it is Deloitte that invoked the provision, arguing that it preempts the (supposed) duty imposed on it by Illinois law to disclose the PCAOB's criticisms. Except for the narrow category of cases where a federal statute completely preempts state law—a category limited to § 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act, and §§ 85-86 of the National Bank Act, *see In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003))—preemption is a defense that does not create federal jurisdiction even if it is the only disputed issue in the case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)

("a case may *not* be removed to federal court on the basis of a federal defense, … even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue"); *Hays*, 446 F.3d at 713 ("a case filed in state court under state law cannot be removed to federal court on the basis that there are defenses based on federal law"); *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005) (same). Accordingly, the fact that § 7214(g)(2) is raised not as part of Navistar's well-pleaded complaint, but instead by Deloitte as a defense, means that it cannot support the exercise of federal jurisdiction. *Cf. Grable*, 545 U.S. at 311 (finding federal jurisdiction where the complaint expressly alleged "that Darue's record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by [26 U.S.C.] § 6335(a)"); *Gimbel v. UBS Fin. Servs., Inc.*, 2009 WL 1904554, at *6 (N.D. Ill. May 28, 2009) (finding *Grable* jurisdiction where the complaint alleged that the defendants violated federal law by failing "to disclose … that they were not in compliance with SEC record preservation rules").

The same result holds for two related aspects of Deloitte's submission regarding the misrepresentation-based claims. First, Deloitte maintains that Navistar's allegation that Deloitte should be held responsible for deficiencies in Navistar's internal controls cannot be reconciled with certain Securities Exchange Act regulations and PCAOB standards. But as just noted, Navistar's misrepresentation-based claims rest on state law, and while federal law might preempt state law (whether sounding in contract or tort) to the extent that state law holds Deloitte responsible for deficiencies in Navistar's internal controls, ordinary preemption does not create a basis for federal jurisdiction.

Second, Deloitte obliquely suggests that 15 U.S.C. § 7215(b)(5)(A), which provides that PCAOB materials are "confidential and privileged … in any proceeding in any Federal or State

court or administrative agency," justifies federal jurisdiction. But the prospect that Deloitte will invoke a federal discovery privilege in state court does not open the door to federal court. Were matters otherwise, the federal courts would be flooded with cases removed on the ground that the defendant planned to assert Federal Rule of Evidence 502 as a basis for withholding certain documents from discovery in state court. *See* Fed. R. Evid. 502(d) ("A Federal court may order that the [attorney-client] privilege or [work-product] protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other Federal or State proceeding.").

The Seventh Circuit recently described *Grable* as "one of those cases in which the Supreme Court seems shy about taking a definite stand." *Samuel C. Johnson 1988 Trust v. Bayfield Cnty., Wis.*, 649 F.3d 799, 801 (7th Cir. 2011) (accepting *Grable* jurisdiction). The governing jurisdictional standard is flexible enough, and the body of governing precedent is thin enough, that it cannot be said that Deloitte acted unreasonably in removing this case to federal court. Still, the better view is that subject matter jurisdiction does not lie over this suit, which makes the appropriate disposition a remand to the Circuit Court of Cook County.

October 28, 2011

_____
United States District Judge